Ms. Hartzler. Good morning. May it please the Court, Cara Hartzler for Ramon Huerta-Flores. I'd like to reserve three minutes for rebuttal. Under the Court's recent decision in Coronado, it is clear that Arizona's list of narcotic substances, which includes drugs that do not appear on the Federal schedule, is overbroad. Not only that, but Arizona, unlike California, does not require a jury to determine which narcotic drug a defendant's conviction involved, as shown by the statutory language, Arizona jury instructions, and Arizona case law. Thus, under the Supreme Court's recent decision in DeCamp, the modified categorical approach may not be used to determine whether Mr. Huerta's offense involved federally prescribed substance and the BIA erred in finding him removable. I'll start with the argument about whether the statute is overbroad. And what the BIA essentially did in this case is they said, well, we acknowledge that there are drugs on the Arizona list that are not on the Federal list. But they discounted that and they said, frankly, we don't care because it's close enough. And there's simply no precedent to say that close enough is good enough. The categorical approach is very strict, as we learned recently in DeCamp, and the Supreme Court has said you really have to look at whether there was a possibility that this person was convicted of conduct that falls outside the generic offense. And here the BIA pretty brazenly went outside of that and they said, well, what really matters is did Arizona intend to include all those drugs that were on the Federal list. The problem is that Arizona's intent is completely irrelevant to this analysis. Congress doesn't care what Arizona thinks in terms of what it was trying to do. So because of that, we're in this situation where we, Congress can't, you know, we just can't look at what Arizona wanted to do or did do or didn't do. Is this problem anything other than theoretical? Well, Your Honor, I would have two responses to that. First of all, this Court has said that it doesn't matter if it's theoretical as long as you follow it. The Supreme Court has said that it does. The Supreme Court has told courts not to get creative and imaginative in trying to figure out scenarios that don't fit. And get specific here. I mean, the BIA observed in its opinion in the footnote that they couldn't find anybody who's ever been convicted of the two substances that turn out to be the problem with the, that were mistakenly left on the Federal list that was copied by Arizona. So that brings me to my question. Is this purely a theoretical problem? I have two responses to that, Your Honor. First of all, this held, this Court held in Griselle an en banc decision that so long as the statute by its plain terms encompasses conduct that falls outside, it doesn't matter whether anyone was actually convicted under it or not. The plain terms of the statute control. And then the second point I would point to is that this Court recently in Coronado identified the California controlled substance list and said that there are two drugs that are on that list that are not on the Federal list and identified absolutely no cases involving an actual prosecution. So in other words, and in fact, I'm not aware necessarily of any prosecutions for COT and HCG, which were the substances that were overbrought in that case. So in answer to Your Honor's question, it may be theoretical, but under the law that doesn't matter. Well, is that right? I mean, I hear what you say about decamps, and I'm very familiar with decamps since I was on the three-judge panel that got reversed. But following Ninth Circuit law, I will add. So that was your mistake. But I'm looking at Duenas-Alvarez, the 2007 Supreme Court decision that I think Judge Clifton was alluding to, and it says to show that there's a realistic probability the offender must show that the statute either was applied in his own case or at least point to other cases in which, you know, those facts were applied. And here there are none. And the Court's en banc decision in Griselle was a direct response to Duenas-Alvarez because in that case the government actually said the exact same thing Your Honor is saying. Well, there's no realistic probability if we can't point to an actual conviction. But wasn't the Oregon burglary statute in Griselle similar to California's in that you can be convicted of a burglary for burglarizing a railroad car or going into a store with the intent to commit a theft therein? Yes, but in the same That's not really common law burglary. Well, in that case, though, what they said was that the statute is overbroad on its plain terms. In other words, it includes a railroad car, you know, a list of things. And in other words, Griselle said that when there's a list of things, you don't have to show realistic probability. And so Griselle addressed the exact question that Your Honor is raising and said when the statute says it in plain terms, a realistic probability is not required. I would like to move on to my second point, which is based on the fact that what this Court said in Coronado. In Coronado, the Court said that the California statute here is divisible. And it did so by looking at the plain language of the statute, the jury instructions in California case law. Now, what Coronado, the rationale that this Court employed in Coronado actually shows that by contrast, the Arizona statute here is not divisible. And there's several reasons for that. First of all, in the Arizona statute, unlike the California statute, it just says narcotic substance. It doesn't refer to any statutes or any subsections the way the California statute does. The second reason is the Arizona jury instruction only requires a fact finder to determine that the substance was in fact a narcotic drug. So unlike the California jury instructions that the Court pointed to in Coronado where there's a blank space and it says you have to find that the drug was X, there's no similar requirement under the Arizona jury instructions. But isn't the jury doing the same thing? Aren't they essentially being told there's a list of controlled substances and you must find in considering whether or not the prosecution has met its burden of proof beyond a reasonable doubt as to each element of the offense that the substance involved was a listed substance? Well, Your Honor, in Arizona, you, for instance, two jurors could disagree. One juror could say, I think he has substance A. Another juror could say, I think he has substance B. And they could still get a conviction. And what this Court held in Coronado is that that wasn't the case, that the jury had to be unanimous and say we believe it was all substance A. And so that's the distinction between those two. Well, it has to be a narcotic. It has to be a listed substance. The jury can't decide we don't like silly putty and so we're going to say silly putty is possession of a narcotic drug. Exactly, Your Honor. But the jury doesn't have to decide which substance it was and whether it was one of the substances that falls on the Federal list or does not. But you'd have a problem, I guess, to follow Judge Clifton's hypothetical if one of the jurors thought that the active substance, that the person was under the influence of THC, an active ingredient in marijuana, and another juror thought that he'd just eaten too many poppy seed muffins that day, right? Absolutely. But they could still convict him for, as long as both of those were a narcotic substance, they could still convict. Well, the problem in my hypothetical is that poppy seed muffins are not. They're not. It isn't a listed substance. It's a noncontrolled substance. And I'm sorry, I'm not quite. Well, your argument was that, I'm not sure your argument is correct that there doesn't have to be unanimous agreement on the substance, that it was a controlled substance. Well, maybe. I'm trying to think of a drug where the jurors could find that, well, it's, you know, this listed substance as opposed to that listed substance. Let me move on then to Arizona case law, because I think that addresses what you're talking about. The Arizona case law clearly shows that a jury need not agree. And I'm quoting from a case called State v. Castorina, which says, Neither our statutes nor case law require the State to prove that defendant knew which particular drug defined under our laws as a narcotic drug he knew he possessed. So clearly in Arizona case law. And then also another case I would cite is State v. Brown. It says that if there is any sort of ambiguity about whether something is a means versus an element, that gets resolved in favor of the defendant. So Arizona case law is very clear that, unlike California, a jury doesn't have to be unanimous on the issue of what the substance, in fact, was. And so that's the distinction we're drawing here. If the Court has no further questions, I believe I'll reserve the remainder. Thank you. Absolutely. Good morning, Your Honors. May it please the Court. Lindsay Murphy on behalf of the Attorney General. Your Honors, the issue here is whether the Arizona narcotic drug definition relates to a federally controlled substance. Contrary to the Petitioner's position, the issue is not whether the Arizona narcotic drug's definition is a categorical one-to-one match with the Federal controlled substance's schedules. This Court has considered in Lulee that the Arizona drug, narcotic drug definition isn't required to be a perfect match with the Federal controlled substance's schedules. It doesn't need to map perfectly, because a term relating to is to be considered broadly. And as Judge Clifton mentioned, this is purely a theoretical problem, because as the Board indicated and as the Respondent indicated in our brief, benzylfentanyl and phenylfentanyl, there's no record of either of those drugs having been involved in any prosecutions in Arizona for conduct involving those two substances. And here it's clear, and Petitioner does not argue, that he was convicted for conspiring to sell either of those two substances. Furthermore, regarding the divisibility issue, here the Board did not find it appropriate to say that the Arizona statute categorically or was, relates all of the offenses, excuse me, all of the substances under the Arizona statute relate to a controlled, a Federally controlled substance. I have to tell you, I have some difficulty with the logic offered up by the BIA. And I don't hold you accountable for that, because you're not responsible for it. But I don't understand how relating to, relating to I can understand in the Federalist, I can tell you, because a given device could be used for multiple kinds of substances. I don't understand how it can be applied to say, well, this list, it contains a couple things that aren't on the Federalist, it's good enough for government work. How does relating to, why is the modifier to be applied to the substances on the list, particularly given our Court's case law that clearly says the California list, which has extra things, you can't have a categorical match. So how is it that the BIA can decide the Arizona list can be a categorical match based on a relating to? Well, here, because it's clear, given the legislative history, the Arizona legislature's intent in drafting its narcotic drug schedule, that the Arizona drugs, I mean, from 1989 when it expressly added all of the drugs to the narcotics drugs list that were included in the Federal CSA in order to make the two lists coextensive so that they coincide. And at that time, benzoyl fentanyl and phenyl fentanyl were included mistakenly still on the Federalist. And in Lulay, this Court relied on the Arizona legislative intent and said, well, it's clear that the Arizona legislature intended to follow the Federal statute of controlled substances. And, Your Honor, But does that mean if somebody in Arizona had actually been charged with one of the substances that wasn't properly on the Federalist but was mislisted by the BIA and Arizona copied somebody else's paper and picked it up, under Arizona law, it seems there would be a pretty good case for a conviction or a basis to support a conviction, wouldn't there? This whole relating to specifically has to do with what the Federal government might say about it. But if you happen to be convicted for possessing and distributing one of those substances in Arizona, would you have a very good argument to the Arizona Supreme Court that the conviction should be void because it wasn't really meant to be that way? You may, Your Honor. But I think also under that scenario, if Arizona were to prosecute these types of substances, then that would undermine the Board's decision in this case because it would, you know, I think it wouldn't be as close of a match. And the Arizona legislative intent there might prove to be to the contrary. But here that's clearly not the case. And the reason they expired under the Federal schedules is because these two substances weren't found to be dangerous at all. And so it's highly unlikely that this would result in Arizona that these two drugs would be, people could be prosecuted for use or conduct involving these two drugs. And as far as Petitioner's reliance on Gristle regarding the theoretical problem, I mean, Gristle really, I believe Petitioner's reliance is disingenuous here. Gristle involved an Oregon statute burglary definition where the Oregon legislature expressly drafted its definition of burglary broader than the Federal generic definition. And as a result there, the court said that it's, there's no realistic probability or there was a realistic probability because the legislature intended there the definition to cover a broader range of conduct. And so Duenas-Alvarez didn't apply. But here that's clearly not the case given the Arizona legislature's intent. If there are no further questions, Your Honor, I'll submit. I don't have any. No? Thank you very much. Thank you. I'd like to start with my opposing counsel's last point regarding Gristle. Again, the government is relying on this issue of, well, what does the state legislature intend? We don't care. We care what Congress intended. And it's clear from two examples that Congress did not intend for a state legislature's intent to control. For instance, in the domestic violence ground of removability, Congress specifically allows states to define a domestic relationship. It says however a state defines a domestic relationship, we'll say that that's part of the categorical approach. So obviously Congress knew how to defer to a state's intent. But they didn't do so here. In fact, the contrary, the old version of this same statute actually had a version where it just said narcotic drug or marijuana. It didn't specifically link it to the federal schedule. And then in around 1988, Congress amended the statute. And they said, no, we're going to make this specifically link to the drugs listed in the Controlled Substance Act. But wasn't the overall legislative purpose here not to grant immigration benefits to drug users, drug traffickers, people who were convicted of offenses relating to controlled substances? I mean, I don't think Congress ever gave any consideration at all to this kind of a problem. What it wanted to do was to declare that there's a certain class of aliens that we do not want to grant citizenship or other immigration benefits. I think Congress intended for there to be consistency. In other words, Congress didn't want to say that, well, if this state, to use Judge Clifton's example, you know, prohibits silly putty, we don't want someone to get convicted and deported on that ground. So that's what Congress wanted. And I understand the court's concern that maybe this is letting people who are drug traffickers get away. But we define drug trafficking for federal immigration purposes by federal law. And so it's just not enough to say that because a state wanted this. The problem here, obviously, is with the offenses of conviction. You know, just looking at the charge without knowing what the substance is, conspiracy to sell narcotic drugs, conspiracy, sale, you know, that's a pretty standard federal type of an offense. As you know, we see them all the time under Title 21. So why are we violating the intent of Congress here in upholding the administrative agency's decision that this individual was convicted of offenses related to controlled substance? I understand Your Honor's concern because ultimately the categorical approach is frustrating. It results in situations like this where we think, well, we all know that he did it. But the fact is that the Supreme Court has been very, very strict about imposing the categorical approach. And the reason it is is because we don't want to have those mini-trials. We only look at what, as DeCamp would say, what a person has been convicted of as the Constitution defines that term, convicted of. We know that there have been no reported prosecutions that this individual could not have been convicted of the only two listed substances that would not otherwise be a perfect match with the controlled substance. But if that were required, then this Court would have reached a different decision in Coronado. This Court would have, in Coronado, gone ahead and said, well, then we need to look at whether there were any convictions for COT or HCG. And the Court didn't do that in Coronado. No, it didn't do it and it didn't say to the contrary. It may have been that there was no argument made with regard to whether there had been any prosecutions or convictions for those substances. But here we've got the BIA noting explicitly that it looked and couldn't find anybody ever being prosecuted for these. Understood. But because the Court in Coronado, I think that we have to assume that the Court followed Griselle in Coronado and said because this is laid out in the plain terms of the statute, we don't have to find a specific case. I'd just like to address the issue also of paraphernalia that opposing counsel raised. And the issue with that is that the opposing counsel says, oh, well, there doesn't have to be this one-to-one correspondence. The problem with that argument is that this Court has multiple times distinguished paraphernalia from offenses such as this that actually involve simple possession or any sort of possession with intent to sell that involve an actual drug. And, in fact, Ruiz Vidal said specifically that while we acknowledge that paraphernalia is a little bit different, if we were to take the same approach in paraphernalia cases as we do here, it would read out that one-to-one correspondence that Congress required by putting the words a drug listed in the Controlled Substance Act into the statute. So because of that, the comparisons to paraphernalia just don't work here, and there's no case law ever applying a paraphernalia case to a situation like this that involved an actual possession or possession for sale of a controlled substance. I believe that if the Court has no further questions at that point, I will conclude. Thank you both for your arguments. Thank you, Your Honor. The case just argued is submitted. We'll take a 10-minute recess.
judges: Duffy, Tallman, Clifton